December 28, 1977

## 78-90 MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### Federal Reserve Board—Residency of Board Member (12 U.S.C. § 241)

You have asked for our opinion concerning the requirement in 12 U.S.C. § 241 that "not more than one of whom [the Board of Governors of the Federal Reserve System] shall be selected from any one Federal Reserve district . . . ." We have been informed that the President wishes to nominate to the Board an individual who resides and has his present principal business activities in a district other than the district from which he is being selected. Specifically, we understand that the nominee is to be "selected from" the Federal Reserve district of which the State of Oklahoma is a part. It appears that the nominee was born in Oklahoma and spent the bulk of his childhood and adolescence in Texas;[1] after his graduation from high school he attended the Coast Guard Academy, obtained his law degree from the University of California and was admitted to the bars of the States of California and New York. After practicing law for several years in New York City, the nominee moved to Providence, Rhode Island, where he has been in business in the private sector for approximately 20 years.

It is our view that the language of the statute, its limited legislative history, and the history of appointments to the Board of Governors indicate that Congress did not intend to impose a strict residency requirement upon the selection process. Therefore we do not think it necessary that the nominee satisfy any strict residency or domicile requirement in order to be selected from the Oklahoma district.

First, the plain language of § 241, when read in its entirety, reflects the congressional intent. While the first clause in the pertinent sentence from § 241 states that no more than one member shall be "selected from any one Federal Reserve district," the remainder of the sentence instructs the President to "have due regard to a fair representation of the financial, agricultural, industrial, and commercial interests, and geographical divisions of the country." Plainly, the statute was not drafted as a residency requirement. In other

---

[1] No part of Texas falls within the district of which Oklahoma is a part.

contexts, of course, Congress has specified that nominees to Federal agencies shall be residents of the districts they represent. *See, e.g.,* 12 U.S.C. § 2242(c) (1971) (Federal Farm Credit Board); 10 U.S.C. § 9342 (Air Force Academy cadets). Had Congress intended to impose a domicile or residency requirement it could have done so. Instead, it instructed the President to seek nominees who could represent fairly the diversity of geographical and other interests within this country.

Second, our reading of the statute is supported by the following explanation of § 241 from the House Report:

> The provision that the President in making his selections shall so far as possible select them in order to represent the different geographical regions of the country has been inserted in very general language in order that, while it might not be minutely mandatory, it should be the expressed wish of the Congress that no undue preponderance should be allowed to any one portion of the Nation at the expense of other portions. The provision, however, does not bind the President to any slavish recognition of given geographical sections. [H.R. Rept. No. 69, 63d Cong., 1st sess. 43 (1913).][2]

Third, the history of appointments to the Federal Reserve Board of Governors indicates that Congress itself has not read § 241 as imposing a strict residency requirement. Several examples might be cited:

In 1914, Adolph C. Miller of California was first nominated, confirmed, and appointed to the Board from the San Francisco district. He, as have other Governors, apparently moved to the Washington, D.C., area to take up his full-time responsibilities as a Governor. He was then reappointed from the San Francisco district in 1924 for another 10-year term and, in the President's nomination, was said to be from California, 65 Cong. Rec. 8804 (1924). In 1934, Mr. Miller was again nominated for another term, but this time he was identified as being "of the District of Columbia" and was reappointed and served for the Richmond district.

One of the presently serving Board members, Andrew F. Brimmer, is a second example. Mr. Brimmer was born in Louisiana and served in many positions in academia, the Federal Government and the private sector before his nomination to the Board in 1966. At the time of his nomination he lived in the Washington area and was an Assistant Secretary at the Commerce Department. Immediately before coming to Commerce, Mr. Brimmer was a faculty member at the Wharton School of Finance and Commerce in Philadelphia for several years, that being his only contact with Philadelphia. He was "selected from" the Philadelphia district based on that contact.

Another presently serving Board member, Robert C. Holland, is a third example. Mr. Holland was born in Nebraska in 1925 and lived there until about

---

[2]We have been unable to find any other relevant legislative history. The Senate report on the bill is not enlightening and was not a majority report, the bill having been reported out of committee without recommendation. *See* S. Rept. 133, 63d Cong., 1st sess. (1913). The legislative debates, while exhaustive, are likewise not relevant to the question posed herein. *See* 50 Cong. Rec. 4638 *et seq.* (1913); 51 Cong. Rec. 274 *et seq.* (1913).

the age of 21. He then received degrees from the University of Pennsylvania and was an instructor at the Wharton School from 1948-49. He then entered Federal employment, serving from 1949 to 1961 with the Federal Reserve Bank in Chicago, and then held a number of positions in Washington on the staff of the Board of Governors until his nomination and appointment as a Governor "selected from" the Kansas City district (of which Nebraska is a part).

Yet another example is former Board member James Louis Robertson. He was born in Nebraska, obtained his undergraduate degree from George Washington University, and received his law degree at Harvard. He became a career Government employee and at the time of his nomination had worked for the Federal Government for 24 years. Despite the fact that his career and professional training were centered in the East, he was selected from the Kansas City district. *See* Hearing Before the Senate Committee on Banking and Currency, 88th Cong., 2d sess., p. 7 (1964).

Given these precedents, coupled with the language of the statute and its relevant legislative history, we think that the President might well conclude that a nominee who was born in Oklahoma and who was raised in that part of the country could fairly represent the "financial, agriculture, industrial, and commercial interests" of the geographical area covered by the Kansas City district. Ultimately, of course, Congress will have an opportunity in the confirmation process to consider the desirability of that judgment.[3]

LARRY A. HAMMOND
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[3]As written, the statute suggests that Congress may focus not only on the question of the nominee's ability to represent the region from which he is selected, but also on the question whether the nominee may occasion an over-representation of some other district (in this case the district covering Rhode Island). Our analysis would indicate, however, that the important inquiry will focus upon the substantiality of the nominee's contracts with, and knowledgeability about, the district from which he is selected rather than upon his contacts and relationships in some other region.